———o———

STATE SAVINGS ASSOCIATION OF ST. LOUIS, Plaintiff in Error, *vs.* SANFORD B. KELLOGG, *et al.*, Defendants in Error.

1. *Corporations—Dissolution—Insolvency—Stockholders, liability of.*—A corporation which is insolvent, and has been adjudicated a bankrupt under the United States Bankrupt Act, is dissolved, and a dissolution so brought about, is sufficient to authorize creditors to bring suits against its stockholders under the statute (W. S., 293, § 22,) without joining the company in the suit.

2. *Corporations—Insolvency—Suits against shareholders—Suit against corporation, not necessary, when.*—The statute which provides that stockholders shall not be personally liable for any debt contracted by the corporation unless suit shall be brought against the corporation within one year after the debt becomes due, (W. S., 336 § 13) does not apply when the corporation, has been dissolved by bankruptcy. Such suit against the corporation would be a useless form, and the law will not enforce an act which would be frivolous.

| 52 | 583 |
| 52a | 453 |
| 52 | 588 |
| 120 | 56 |
| 56a | 92 |
| 52 | 583 |
| 131 | 666 |
| 52 | 583 |
| 73a | 32 |
| 74a | 625 |
| 52 | 583 |
| 82a | 42 |
| 52 | 583 |
| 90a | 199 |

*Error to St. Louis Circuit Court.*

*T. T. Gantt,* for Plaintiff in Error.

I. The Southwestern Freight and Cotton Press Company was *"dissolved"* in June, 1869. It is admitted by the pleadings, that it was in that month decreed a bankrupt. It is further admitted by the pleadings, that it was then wholly without funds or means.

When it is provided in the act creating a corporation "that the individuals composing it shall be liable at the time of the dissolution of the company for the debts then due, any inability of the company by reason of a total want of funds to exercise its corporate powers, will be deemed a dissolution." (Ang. & Ames on Corp., § 613, (9th edition.) Penniman vs. Briggs, Hopk. Ch., 300; S. C., 8 Cow., 387; Bank of Poughkeepsie vs. Ibbotson, 24 Wend., 473.)

In the case of Slee vs. Bloom, 19 Johns., 456, the High Court of Errors reversed the decision of Kent, Chancellor. That eminent jurist had decreed that the corporation was not dissolved by insolvency. But Ch. Just. Spencer, delivering the opinion of the Court of Errors, held "that the corporation is dissolved when it has done, or suffered to be done, acts equivalent to a direct surrender." (p. 473.)

Pursuing the inquiry as to when the dissolution occurred, he remarked (p. 477) "we may safely say it happened on this February, 1818, when all the property of the company was sold."

The case of the Southwestern Freight and Cotton Press Company is stronger than this, for in June, 1869, it was adjudicated a bankrupt, on its own petition, and had no assets at all.

II. The conditions then obtained on which it is provided in § 20, Ch. 62, that "suits may be brought against any person or persons who were stockholders at the time of such dissolution," without suing the company itself.

If this be the only provision of the statutes which we need consult, it is difficult to see how the liability of the defendants can be denied. And even if § 13 of Ch. 69 must also be satisfied the same conclusion is, it is submitted, inevitable. But

the General Assembly had no right to impose the conditions which it prescribes. The pointed and emphatic mandate of the Constitution, (Cons, of Mo. Art., 9 Subd., 6,) is that "in all cases each stockholder shall be individually liable, over and above the stock by him or her owned, and any amount unpaid thereon, in a further sum at least equal in amount to such stock."

Looking to the provision of § 13 of Ch. 69, we see that it declares, substantially, that stockholders shall not be liable in all cases for the debts of corporations, but that in respect of debts of a certain character they shall not be liable at all.

Here is the legislative imposition of conditions, the legislative annexing of qualifications, of a very important nature, to the constitutional mandate. The conditions are arbitrary and onerous, and may be entirely impracticable. In the case at bar, the specific performance of the second of the conditions is, and was in 1869, impracticable. Its performance, *cypres*, would have been vain and futile.

III. But (supposing us bound by this provision, for the sake of the argument,) we are not barred by having omitted to sue the company within a year after the debt matured. Before the debt was sixty days old, the company was decreed a bankrupt. Not only was this the case, but it was then totally, absolutely, without any assets. Of course our statute, speaking as of the 1st August, 1866, at latest (p. 882, Rev. St., 65,) had reference to no provisions of the act of 2d March, 1867, which being passed by the Congress of the United States, in direct and express pursuance of the authority of the Federal Constitution, is "the supreme law of the land." Equally, of course, our Legislature in 1866, by the language employed, intended ordinary actions at law. It could not have intended to require a creditor to be guilty of a contempt of court, by suing in a State Court a decreed bankrupt.

The plaintiff was not bound to prove up its demand against the assets of the bankrupt corporation in the hands of the assignee. There were no assets at all. "*Lex neminem cogit ad vana, seu impossibilia.*" But if "the law compels no

man to do an idle, or an impossible thing," it surely cannot be argued either that it required the plaintiff to prove up his demand against an estate confessedly not able to pay costs, or to incur the penalties of a contempt by suing a decreed bankrupt in the courts of Missouri.

If indeed, there had been any assets in the hands of the assignee of the corporation, it was our duty to have exhausted them. But there being none, it will be strange doctrine if we were nevertheless obliged to go through the idle form of asking for a share of it. Surely this would be compelling a man to do a vain thing, contrary to the maxim "*lex neminem cogit ad vana seu inutilia*" (Broom's legal maxims, 248 ; Trustees of Huntington vs. Nicoll, 3 Johns., 566,598.)

*Glover & Shepley,* for Defendants in Error.

I. The decisions have been uniform that insolvency within the meaning of the bankrupt law is only the present inability to pay the debts of the corporation or individual, as they mature.

II. The right given by the statute of this State against the individual stockholders, is only after all the means have been exhausted, as against the corporation, and all its assets applied so far as they will go.

Section 11 of the act (Genl. Stat. 1865 p. 328,) provides that only after a judgment has been obtained against the corporation and execution issued thereon, and no property was found sufficient to satisfy the execution, can the stockholder be called upon to respond. It proceeds upon the theory, that the assets must be exhausted before the individual liability commences.

III. The dissolution of the corporation spoken of in Section 20, which gives the right to sue the stockholder upon the "dissolution" of the corporation, is an absolute dissolution— *a ceasing to exist where there are neither officers to be served with process, nor assets to respond,* and therefore, judgment cannot be had against the corporation, because there is no one to respond.

That this is the meaning of that section, is obvious from

the preceding section, the 19th, which treats about the "dissolution" of the corporation. It provides that when a corporation dissolves—has ceased to exist—certain officers shall be trustees for the purpose of distributing its assets among its creditors, and may sue and be sued as such trustees. This can only be the case when the corporation has expired by limitation, or when it has surrendered its franchise. The "dissolution" spoken of in the 20th Section, is the "dissolution" spoken of in the 19th section, and so long as it can be sued as a corporation, and does not act by its former officers as its trustees, there has been no dissolution within the meaning of the act.

The 37th section of the bankrupt law provides that corporations shall not be discharged from their debts, but they exist as before.

Suppose the assignee pays 95 per cent. of the debts, what is to prevent the corporation from continuing till the term limited in its charter expires, by an issue of new stock or a voluntary assessment subscribed by its stockholders.

The present bankrupt law was mainly fashioned from the insolvent law of Massachusetts, and that law contained a similar provision in relation to discharge of a corporation. The same question now arising was presented in the case of Coburn vs. Boston Papier Mache Company, 10 Gray, 243; and Chief Justice Shaw, then decides that under such a provision the law does not operate as a dissolution.

The provision in the bankrupt law that there can be no discharge, admits the right to sue, however fruitless it might be.

IV. As this is a manufacturing Co., organized under G. S. Ch. 69; W. S. Ch., 37, Art, VII. there can be no recovery under the provisions of the 13th section against individual stockholders, unless suit had been commenced against the Company within one year after the debt became due, and neither was any suit commenced within one year, nor is it averred or proved that this debt was proved up in bankruptcy within one year, or at all.

WAGNER, Judge, delivered the opinion of the court.

This was an action against the defendants, as stockholders

of the Southwestern Freight & Cotton Press Co. The petition alleges the organization of the company as a corporation under the laws of this State, its existence as such corporation in 1869, its becoming indebted to plaintiff in the same year, and its dissolution in June 1869. The averment is that in June 1869, the said corporation became wholly insolvent and bankrupt, and presented its petition to the United States District Court and was in that month declared a bankrupt, and was totally without funds or means, whereby it became dissolved being unable by reason of a total want of funds and means to exercise its corporate powers.

The answer of the defendants denies that they or either of them are in any manner liable to the plaintiffs, but there is no denial of the insolvency of the incorporation. At the trial plaintiff proved the indebtedness of the corporation as stated in the petition. The case was then submitted on the pleadings and proofs, and at the request of the defendants the court declared the law to be, that the plaintiffs could not recover. This action was brought under the statute (1 W. S., p. 293, § 22) which declares, if any company formed under this act dissolve leaving debts unpaid, suits may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the company in such suit.

The first question is, whether the insolvency of the company amounted to a dissolution so as to give the plaintiffs the right to pursue this remedy.

In the case of Moore vs. Whitcomb, (48 Mo., 543,) it was held that a corporation might be dissolved by a surrender of its franchises, and if it suffered acts to be done which had the effect of destroying the end or object for which it was created, it was equivalent to a surrender of its rights and in effect a dissolution.

In the above cited case we mainly followed the leading case of Slee vs. Bloom, (19 John. 456) where the question is most thoroughly examined in the Court of Errors, in the State of New York. In that case it appears that pursuant to a statute the defendants associated together for establishing a cotton

manufactory, and became a corporation according to the provisions of the statute. For the space of one month there was no meeting of the trustees, nor any business or act done by the corporation; then all the property of the corporation real and personal was sold by the sheriff under an execution. Shortly thereafter the plaintiff, a creditor of the corporation, filed his bill against the defendants to charge them under the provisions of the act, as individually responsible for the debts of the corporation to the extent of their respective shares of stock, alleging that the corporation was to be considered as dissolved after the selling of all its property by the sheriff.

The court held that the corporation within the meaning and intent of the act, as regarded creditors, was dissolved, after ceasing to act as a corporation for such a length of time, and after a sale of all its property, and that the defendants were individually responsible for the debts of the corporation according to the act.

In the course of his able opinion Chief Justice Spencer said, "In point of good sense, this corporation was dissolved within the meaning and intent of the act, as regards creditors when it ceased *to own* any property, real or personal, and when it ceased for such a space of time, from doing any one act manifesting an intention to resume their corporate functions. The end, being and design of the corporation were completely determined, and if even it had the capacity to re-organize and re-invigorate itself, the case has happened when, as relates to its creditors, it is dissolved." The learned judge continued that, with respect to the period of dissolution, it happened when all the property of the company, was sold and that after that time no corporate act was done. So in Penniman vs. Briggs, (Hopk. Ch., 300; S. C., 8 Cow., 387) where a manufacturing corporation, established under the same general law as that just alluded to, for twenty years, became insolvent within the time, and incompetent to act by the loss of all its funds, and under the provisions that "for all debts which shall be due and owing by the company at the time of its dissolution, the persons then composing the company should be

individually responsible to the extent of their respective shares of stock in the company and no further," it was decided that the corporation was to be deemed dissolved for the purpose of the remedy by the creditors against the stockholders individually. It may be admitted that the old and well established principle of law remains good as a general rule, that a corporation is not to be deemed dissolved by reason of any mis-user or non-user of its franchises, until the default has been judicially ascertained and declared. But it must be observed, that the plaintiff has no control over the process or remedy to dissolve this corporation, either for non-user or for any other cause. It is necessary that the State through its law officer should institute such proceedings. Then if we are to consider this corporation in existence, the plaintiff as a creditor before it can have any remedy, must wait till the charter expires by limitation of time, or until the law officer of the State shall see fit to institute proceedings to vacate it; which may never happen. In the meantime the creditor is wholly remediless. A doctrine so unreasonable, ought not to find any sanction or support.

Now the averment in the petition was that when the company presented its petition to the United States District Court, it was dissolved, being wholly unable, by reason of a total want of funds and means, to exercise its corporate powers. The answer admitted the total want of funds and means, the absolute destitution of assets, but denied the legal inference that the corporation was thereby dissolved within the meaning or sense in which that word is used in the statute.

When the corporation was utterly penniless, for what end or object did it continue. What good did it do the creditor to be told that there was the naked shadow but that the substance was all gone. The corporation for all essential purposes was as effectually dissolved as if a solemn judgment of court had been pronounced to that effect. I have no hesitation in coming to the opinion that there was such a dissolution as would afford creditors a remedy against the individual shareholders.

But it is further contended that this action is not sustainable because no suit was first brought against the company. The statute (1 W. S., p. 336, § 13) provides, that "no stock holder shall be personally liable for the payment of any debt contracted by any company formed under this chapter which is not to be paid within one year from the time the debt is contracted, nor unless a suit for the collection of such debt shall be brought against such company within one year after the debt shall become due, &c."

The law does not require useless things, and what possible good could have been accomplished by bringing suit against the company. It would only have been accumulating costs for the plaintiff to pay in addition to its failure to obtain any satisfaction.

Before the debt was sixty days old, the company was decreed a bankrupt. It had no assets whatever, it would have been an idle ceremony—a useless form—to have proved up the claim in the Bankrupt Court, for the estate was totally without funds or means of any kind. The Statute plainly refers to ordinary actions where there is a subsisting corporation. But here, before the limitation had expired the corporation was dissolved. The mere bringing of a suit under such a state of facts, would have been idle, vain and fruitless. Says Kent, Ch. J., in Trustees of Huntington, vs. Nicoll, (3 Johns., 566-598.) "It is one of the maxims of the common law, and which is a dictate of common sense, that the law will not attempt to do an act which would be vain, or to enforce an act which would be frivolous."

The acts in this case surely take it out of the dry letter of the law, and furnish a remedy within its spirit and meaning. A literal compliance would have been wholly futile, and the reason for not proceeding I think is good, legal and sufficient.

I am of the opinion that the judgment should be reversed, and the cause remanded.

The other judges concur, except Judge Sherwood, who is absent.