## YOUREE v. THE HOME TOWN MUTUAL INSURANCE COMPANY OF WARRENSBURG, MISSOURI, et al., Appellants.

In Banc, February 24, 1904.

1. **CORPORATION: De Facto Dissolution: Party to Action.** The petition alleged that the individual defendants undertook, unlawfully, to sell all the assets of the defendant insurance company to other persons named, and that they further undertook to appoint certain of the persons so named officers to manage the business of the company, and that these parties assuming to act as its officers were ousted in *quo warranto*, and then proceeded with allegations of the company's insolvency and of its ceasing to do business, which, it is charged, was a *de facto* dissolution of the corporation. *Held*, that these allegations, standing alone, very nearly approach a declaration that the corporation was absolutely dissolved; but, as they were followed by other allegations that the individual defendants regard the corporation as still in existence, it must be held, in a suit for the appointment of a receiver of the insurance company, that that company is a necessary party. The cessation of a corporation to do active business does not imply a dissolution so as to deprive it of its right to action.

2. ———:**Service of Summons: Chief Officer.** The sheriff's return in a suit to appoint a receiver of an insurance company, certified that it was executed "by delivering to Charles Sadler, acting receiver and chief officer of said company, and in charge of its place of business, and also to W. D. Faulkner, last vice president of said company," certified copies of the writ and petition, and also certified that the last president of the company was a non-resident of the State. *Held*, that Sadler, having charge of the property as an officer of the court, was not, in contemplation of law, the company's chief officer, and hence the service on him was not in compliance with the statute; and that, "the last president" being absent, "the last vice president" was its chief officer, and the service on him was sufficient. *Held*, also, that the word "last" could have been omitted, since Faulkner, if "the last vice president," was, under the law, still its vice president at the time of the service.

3. ——: ——: ——: **Place of Service.** It is not necessary, under the statute, in the absence of the president of a corporation, to deliver a copy of the writ and petition to the other chief officer at some business office of the company, but it is sufficient to leave "a copy at any business office of said company with the person having charge thereof."

4. ——: **Failure to Elect Officers.** In the absence of any statute providing that officers of corporations shall hold over in case of failure to elect at the expiration of their term, the common law rule prevails, which is: the failure to elect officers, of a corporation, public or private, does not dissolve the corporation, but the old officers hold over until their successors are chosen and qualified.

5. ——: **Appointing Receiver: Cause of Action.** It is held in this case, in reply to the contention that the petition, which is set out in full, does not state a cause of action, that, if the conditions alleged of an insurance corporation actually exist (and the trial court found them to exist) it would be a humiliating confession of the weakness of our system of jurisprudence to say that a court of equity could afford the petitioner no relief.

Appeal from Johnson Circuit Court.—*Hon. Wm. L. Jarrott,* Judge.

AFFIRMED.

*O. L. Houts* for appellants.

There was no service upon the defendant insurance company, or any of the defendants. The court, therefore, erred in overruling the motion of appellants to quash and strike out the sheriff's return, and the judgment should be reversed and the cause remanded. R. S. 1899, secs. 994, 995 and 996; Hoen v. Railroad, 64 Mo. 561; Railroad v. Hoereth; 144 Mo. 136. The statute provides the only way to obtain service of summons upon a corporation in this State, and that way must be strictly pursued. The very language of the return shows conclusively that neither Sadler nor Faulkner was "the president or other chief officer of such company," as contemplated by the statute. Faulkner was the last vice president of the company only, in the lan-

guage of the return, and Sadler had charge of the property and the affairs of the company as acting receiver, according to the return. But it further appears from plaintiff's petition and the record in this case that the company at the time had no president or chief officer and had no business or business office. Plaintiff has so alleged and is bound by her allegation. Delivery to defendant Sadler "acting receiver and chief officer of said company and in charge of its place of business" was not "leaving a copy thereof at any business office of said company with the person having charge thereof" as provided by the statute, because the sheriff did not leave a copy of the writ and summons at the company's place of business with Charles Sadler, but simply gave the copies to Charles Sadler without saying where he was, and the return is for that reason bad if otherwise good. Laney v. Garver, 105 Mo. 355. Defendant Sadler was not a "person having charge" of the "business office" as contemplated by the statute. He did not represent the company, but had been appointed receiver by the court and as such and as the officer and representative of the court and not of the company, had taken possession of the company's property and affairs not for the purpose of doing business, but to wind up the affairs of the company, and after he was removed as receiver, continued to hold that property simply as custodian till somebody was appointed to take charge thereof. Service upon him, then, or leaving a copy with him, was not service upon the company. If he had continued to be receiver of the company and had not been removed, service upon him would not have been service upon the company. Heath v. Railroad, 83 Mo. 617. The Home Town Mutual Insurance Company was not properly served; none of the defendants, therefore, was properly served, and the whole return was bad and should have been stricken out. Westmeyer v. Gallencamp, 154 Mo. 28.

*Ewing Cockrell* for respondent.

(1) By the insolvency of defendant company and the cessation of its business of insurance, it suffered a *de facto* dissolution such as to let in remedies of creditors to wind it up. Moore v. Whitcomb, 48 Mo. 543; Savings Assn. v. Kellogg, 52 Mo. 588; Perry v. Turner, 55 Mo. 425; Kehlor v. Lademann, 11 Mo. App. 553; Bank v. Gallaher, 43 Mo. App. 490; Thompson on Corporations, secs. 3340 and 3345. (2) On a *de facto* dissolution, the winding up of the company may for good cause be taken out of the hands of the directors, who are statutory trustees. Thompson, sec. 6829. (3) In such a proceeding, the directors are obviously necessary parties. Moore v. Whitcomb, 48 Mo. 548. (4) In this cause it is admitted by the pleadings "that there is no one who can lawfully wind up the affairs of said company disinterestedly and with justice to all parties except a receiver," and "that unless such a receiver is appointed, the creditors of the company will be greatly damaged and will recover nothing on their just claims against said company." Thompson, secs. 6555, 6556. (5) In a proceeding to appoint a receiver, the corporation itself is a necessary and proper party defendant. Thompson, sec. 6874. (6) Defendant company has not been *de jure* dissolved and may be summoned into court in order to appoint a receiver for it. Hotel Company v. Sauer, 65 Mo. 288; Bank v. Robidoux, 57 Mo. 446; Thompson, secs. 6666, 3345. (7) The corporation is properly summoned by service on its chief officer. In this case, the president has removed from the State and the acting chief officer is Chas. Sadler. Service may therefore be properly made either on the *de facto* chief officer, Sadler, or the *de jure* chief officer, the vice president, W. D. Faulkner. In this case service has been made on both the *de facto* and *de jure* chief officer. (8) The invalid and merely assumed (not real) appointments as directors and officers of the persons to whom

the company was sold by appellants and the erroneous appointment of a receiver (in which proceeding plaintiff herein was not a party) were nullities and appellants still remained *de jure* directors and officers until the legal election and qualification of their successors. Thompson, secs. 792, 3851. (9) Furthermore, whatever the basis of the tenure of office by vice president Faulkner and appellants, it is admitted by the pleadings that said Faulkner and appellants were the only officers of the company of any kind. Hence appellants cannot question service on the corporation made by service made on its only and admitted chief officer.

FOX, J.—This suit is brought for the appointment of a receiver for the defendant, Home Insurance Company. The petition, which fully discloses the relief sought, is as follows:

"Now comes the plaintiff, Dora Youree, and states: That she is a member and creditor of the Home Town Mutual Insurance Company of Warrensburg, Missouri; that she suffered loss by fire on her policy Number 145, in said company in December, 1897; that in a suit against said company on said policy, a judgment was rendered in her favor in this court at the February term, 1899, for the sum of one thousand fifty-four dollars; that no part of said judgment has ever been paid by said company or by any one for it, and all of the aforesaid sum is still due her from said company.

"That said company was incorporated February 18, 1897, and was organized in the State of Missouri, and under the laws of said State, with its legal residence and chief place of business at the city of Warrensburg in the county of Johnson, State of Missouri.

"That on or about December 3, 1898, the above defendants, W. W. Wood, W. D. Faulkner, James A. Kemper, W. L. Embree, M. C. Shryack, E. N. Johnson, W. L. Hyer, G. W. Hout, John E. Clark, R. L. Denton, J. M. Hill, J. P. Ozias and C. D. Middleton, who were

then the officers and directors of said company, unlaw-fully and with great negligence sold the business of said company and the whole management and control of it and its assets to the following persons:   C. H. Cop-pinger, J. C. Coppinger, A. J. Hare, J. R. Black, S. H. Black, R. J. Martin, Clay L. Prather, L. T. Collier, Ab-ner Thompson, J. W. Snapp, R. W. Wood and R. J. H. Lafoon, or some of them, and assumed to appoint said persons as directors and officers of the company, the said defendants resigning from their positions as offi-cers and directors of said company; that said persons never received or held any right or title to control or manage said company or to hold or exercise the offices to which they were assumed to have been appointed, and were at the February term, 1900, of this court, by a judgment of this court on an information in the nature of a *quo warranto* against said persons rendered at the February term of this court, 1900, ousted from the offi-ces which they were exercising in said company, on the ground that they were never eligible thereto; that after said ouster said company became wholly insolvent, ceased to do any business of insurance for which it was organized and incorporated, and suffered a virtual *de facto* dissolution, such as would authorize the settle-ment and winding up of the affairs of said company by its directors or by a court of equity.

"That by a decree of this court rendered at the February term, 1900, a receiver was appointed for said company by said court; that the court found that losses had been sustained by the members of the company which had been allowed by or against the company, and payment of which was due from the company, in the amount of about seven thousand dollars, and the said receiver was by the court directed to wind up the affairs of the company and to bring suit against the said de-fendants, Wood, Faulkner, Kemper, Embree, Shryack, Johnson, Hyer, Hout, Clark, Denton, Hill, Ozias, and Middleton on account of the damages to the company

caused by the said sale by them, and against the members of the company who were liable to it on their premium notes to it, and that said receiver brought said suits as directed.

"That at the February term, 1902, of this court, certain defendants in suit by the receiver on premium notes moved to set aside the orders appointing said receiver, and this court sustained said motion on the ground that the applicant for said appointment of receiver was only a member of said company and not a creditor and had not sufficient interest to entitle him to said appointment, and said orders of appointment were by the court set aside and all suits by said receiver abated.

"That at the June term, 1900, of this court said defendants who made said sale, filed a motion in this court asking the court to order the suit by the receiver against them dismissed and stating that in the name of said persons, C. H. Coppinger, J. C. Coppinger, Hare, J. R. Black, S. H. Black, Martin, Prather, Collier, Thompson, Snapp, Wood and Lafoon, they were preparing to resist the ouster of said persons as aforesaid, and after judgment of ouster aforesaid were preparing to resist and would have resisted the appointment of a receiver for said company, if they had not been assured by an attorney for some of the creditors of the company that the receiver when appointed would not sue them; and also that said defendants are the last lawful directors of said company, that said W. W. Wood is the last lawful president of said company, and is a non-resident of this State, that said W. D. Faulkner is the last lawful vice president of said company, and that said Jas. A. Kemper is the last lawful general attorney of said company; that after the aforesaid ouster, said defendants were the only directors and officers of said company, and were such at the time of its dissolution aforesaid (and that, therefore, said defendants are made parties to this application); and that defendants herein are

all the parties necessary to the adjudication of this cause.

"That there is no one now lawfully authorized to administer and wind up the affairs of said company except said defendants last above named; that the person now actually in charge of its property and affairs is the last receiver of said company, said defendant Chas. Sadler; that he is in charge of the affairs and property of the company only until the appointment and qualification of some one lawfully authorized to take charge of said company's affairs and property; that there are a dozen creditors of said company, with claims allowed against the company aggregating over seven thousand dollars; that there are hundreds of members of said company whose premium notes are now held by the company; that said notes are only conditional, and to ascertain both amount and fact of indebtedness thereon requires a formal assessment for all losses and expenses and a computation of the indebtedness on each note; and that no creditor is authorized to make or collect such assessment, which can be made only by some one representing the whole company or the directors thereof.

"That said company is and has long been wholly insolvent; that the damage caused by said sale of the company by said defendants amounts to many thousand dollars, which amount should be collected to and for the company and paid to its creditors from said defendants; that an assessment will probably show a large amount of money due on the premium notes, which notes are held by the company to a large amount, which amount thus due should be collected from the note-makers for the company and paid to its creditors.

"That said insolvency was caused by and directly resulted from said sale made by said defendants; that the members of the company would have opposed and prevented said sale had it not been made without their knowledge; that said members whose premium notes

are not held by the company consider their insolvency
to have been caused by said sale and believe that said
defendants should be made by suit to pay the damage
resulting from said sale; and that, therefore, said de-
fendants, Wood, Faulkner, Kemper, Embree, Shryack,
Johnson, Hyer, Hout, Clark, Denton, Hill, Ozias and
Middleton, should not be permitted to wind up or man-
age in any way the affairs and property of the said
company.

"That the Insurance Department of the State of
Missouri holds that it has no jurisdiction over said
company and can not take charge of or wind it up.

"That there is no one who can lawfully wind up
the affairs of said company disinterestedly and with
justice to all parties except a receiver appointed by and
acting under this court, and that unless such a receiver
is appointed, the creditors of the company will be
greatly damaged and will recover nothing on their just
claims against said company.

"Therefore, the plaintiff prays that a receiver be
appointed by this court for said company and that he
be directed by the court to collect the sum due said
company, pay its creditors and wind up its affairs, and
that this court give such other relief and make such or-
ders as to it shall seem just and right."

Upon the filing of the petition, summons in proper
form was issued, directed to the sheriff of Johnson
county. The sheriff, in obedience to the commands of
the summons, issued in said cause, made the following
return, as to the service of said writ:

"I hereby certify that I executed the within writ
on the 9th day of May, A. D. 1902, in Johnson county,
Missouri, on the within named defendant, the Home
Town Mutual Insurance Company of Warrensburg,
Missouri, by delivering to Charles Sadler, acting re-
ceiver and chief officer of said company and in charge
of its place of business, and also to W. D. Faulkner, last

vice president of said company, each a certified copy of the within writ, together with a certified copy of the petition in said cause, as furnished to me by the clerk of the circuit court of Johnson county, Missouri, said defendant being the first summoned by me in the cause, and that I further executed the within writ, on 9th day of May, 1902, in Johnson county, Missouri, by delivering to each of the within named defendants, Charles Sadler, W. D. Faulkner, James A. Kemper, E. N. Johnson, M. C. Shryack, W. L. Hyer, J. M. Hill, G. W. Hout, John E. Clark, R. L. Denton, J. P. Ozias, a certified copy of the within writ, and that I further executed the within writ, on the 9th day of May, 1902, in Johnson county, Missouri, by leaving a certified copy of the within writ at the usual place of abode of the within named defendant C. D. Middleton with a person of his family over the age of fifteen years; and I further certify that W. W. Wood, the last president of said company, the within named defendant, and W. W. Wood and W. L. Embree are non-residents of this State and cannot be found in my said county of Johnson.''

At the October term, 1902, defendants filed their motion to quash the return of the sheriff, which motion is as follows:

''Now come W. D. Faulkner, James A. Kemper, M. C. Shryack, E. N. Johnson, W. L. Hyer, G. W. Hout, John E. Clark, R. L. Denton, J. M. Hill, J. P. Ozias and C. D. Middleton, defendants herein, and appearing for the purpose of this motion only, move the court to quash the whole of the sheriff's return herein, for the reason that it does not conform to the law and does not show service upon the defendants or any of them and does not give the court jurisdiction of the said defendants or any of them. And defendants further move the court to strike out all of said return commencing with the first words thereof and ending with the words 'first summoned by me in the cause,' in the ninth line of said return, for the reason that it does not conform to the

statute or give the court jurisdiction over the defendants or any of them.''

This motion was submitted to the court and overruled. Defendants declined to plead further, the court appointed a receiver for said defendant company, and after unsuccessful motions for new trial and in arrest of judgment, the cause was brought to this court by appeal.

It is apparent, upon this record, there is but one question for our consideration upon this appeal. That is, in respect to the sufficiency of the return of the sheriff upon the writ of summons issued upon the petition.

The correctness and sufficiency of this return must be measured by the statute, which provides the manner of service of writs, in causes wherein a corporation of the character of the one involved in this suit is sought to be brought into court. Section 995, Revised Statutes 1899, provides:

''When any such summons shall be issued against any incorporated company, service on the president or other chief officer of such company, or, in his absence, by leaving a copy thereof at any business office of said company with the person having charge thereof, shall be deemed a sufficient service; and if the corporation have no business office in the county where suit is brought, or if no person shall be found in charge thereof, and the president or chief officer cannot be found in such county, a summons shall be issued, directed to the sheriff of any county in this State where the president or chief officer of such company may reside or be found, or where any office or place of business may be kept of such company, and the service thereof shall be the same as above.''

Our first inquiry upon this proposition must be directed to the question as to whether there is, under the allegations in the petition, a sufficient existence of the

corporation shown, so as to make it a proper or necessary party to this proceeding.

It will be observed that the petition alleges that the defendants undertook, unlawfully, to sell all the assets of the defendant insurance company to other persons mentioned in the petition, and it is further alleged that they undertook to appoint certain of the persons to whom this sale was made, officers to manage and control the business of the corporation. These parties assuming to act as officers of this corporation, so it is alleged, were ousted by a proper judgment upon an information in the nature of a *quo warranto*. Then follows the allegations of insolvency and ceasing to do business, which, it is charged, was a *de facto* dissolution of the corporation.

JUDGE THOMPSON, in his work on Corporations, in treating of the subject of dissolution, says:

"By a dissolution in law is meant a dissolution which may take place either (1) by a judgment of a court of competent jurisdiction; or (2) by a legislative repeal of the charter of the corporation, where the right of repeal has been reserved in the statute granting the charter, or in the constitution or general law; or (3) by the expiration of the period named in the charter as the period of the duration of the life of the corporation. By a *de facto* dissolution, we mean that dissolution which takes place, in substance and in fact, in the case of corporations organized for pecuniary gain, when the corporation, by reason of insolvency or for other reason, suspends all its operations and goes into liquidation."

It would follow from this, if Mr. Thompson announces the correct rule, that the allegations in the petition very nearly approach a declaration that the corporation was absolutely dissolved, and, in that event, was neither a proper nor a necessary party; but the defendants contesting the sufficiency of this return have not so treated it, but, on the contrary, from the allega-

tions of the petition, these defendants regard the corporation as still in existence.

Section 976, Revised Statutes 1899, provides that the president and directors of the corporation, at the time of its dissolution, shall be trustees of the assets of such corporation, with full power of administration of such assets. So far as indicated by this record, no steps have been taken by the directors or officers in charge to administer the assets of said corporation, in pursuance of section 976, supra. Hence, we are forced to the conclusion, in the protection of the interest of creditors, that it has such existence as warranted plaintiff who, according to the petition, is a bona fide judgment creditor, in making the corporation a party to this suit.

In Bank of St. Joseph v. Robidoux, 57 Mo. l. c. 451, it was said by NAPTON, J., speaking for the court: "It is further claimed that the plaintiff had ceased to do business for 18 months before this suit was instituted; and, therefore, is an extinct corporation and has no right to sue. No evidence was adduced to show that the plaintiff was deprived of the right to sue. Its cessation of active business does not imply a dissolution of the corporation, so as to deprive it of its right of action."

To the same effect is Kansas City Hotel Co. v. Sauer, 65 Mo. 279. The court said in that case: "The sale, however, of the hotel property by plaintiff would not *per se* accomplish its dissolution, nor would a dissolution of corporate existence be implied by mere cessation of active business."

JUDGE THOMPSON, in treating of the question now being discussed, says: "The rule seems to be well established that a mere neglect to comply with the requisitions of the charter or by-laws in regard to the time of electing officers does not work a forfeiture of corporate rights and privileges."

In further discussing this subject, the same author deduces from all the authorities this tendency of the

courts, which is eminently just.   He says: ''It is obvious from a reading of the cases that the courts frequently, as in the above cases, treat a corporation as dissolved when it is necessary to do so in order to preserve the rights of creditors, whilst under similar circumstances the corporation would be treated as being still in existence, if to hold it dissolved would lead to a sacrifice of such rights.''

This return certified that it executed the writ ''by delivering to Charles Sadler, acting receiver and chief officer of said company and in charge of its place of business, and also to W. D. Faulkner, *last vice president* of said company,'' certified copies of the writ and petition, etc.

We have reached the conclusion that the delivery of the writ to receiver Sadler as chief officer of the company was not a compliance with the statute.   As receiver, Mr. Sadler had charge of the property, as an officer of the court.   In contemplation of the statute, he was not the chief officer of the company.   On the other hand, we have reached the conclusion that the service of the writ upon W. D. Faulkner, last vice president of the company, is a substantial compliance with the statute.

The return in the case expressly certified the absence of W. W. Wood, last president of this company; in his absence, beyond dispute, the chief officer was the vice president.   It is not necessary, under the statute, to deliver the writ to the other chief officer at some business office; but the terms of the statute are, ''Service on the president or other chief officer of such company,'' or in the absence of such president or other chief officer, by leaving a copy of the writ at any business office of said company with the person having charge thereof.

The allegations in the petition make W. W. Wood and W. D. Faulkner  president and vice president of this company, and its only chief officers.   The use of

the terms "last vice president" does not invalidate this
return. It is true the word "last" could have been
omitted, but if W. D. Faulkner was the "last vice presi-
dent" under the law, he was at the time of the service
still vice president.

The corporation being still in existence, the failure
to elect officers did not dissolve it, nor were the terms of
the officers terminated by reason of such failure.

It is said by JUDGE THOMPSON, in his work in treat-
ing of this particular subject under consideration: "By
the principles of the common law, the failure to elect
officers of a corporation, public or private, does not dis-
solve the corporation, but the old officers hold over until
their successors are chosen and qualified. Neither the
insolvency of a corporation, nor the circumstances
which usually attend an insolvency, such as the *appoint-
ment of a receiver,* works a dissolution of the corpora-
tion, so as to disable it from exercising its corporate
powers and using its corporate name for the purpose of
protecting the rights of those beneficially interested in
its assets and business." [Thomp. on Corp., sec. 6666.]

In a number of States, out of abundant caution, ex-
press statutes have been enacted, providing that officers
of corporations shall hold over, in case of failure to
elect at the expiration of the term. In the absence of
any statute to the contrary in this State, the common
law rule should prevail.

In Moore v. Whitcomb, 48 Mo. 543, the question
was presented as to the proper party to be made de-
fendant in an action by a creditor, under the statute
which provides that the officers and directors shall be
trustees of the assets of a dissolved corporation. It was
held that the last surviving officer was the proper party.
So it may be said in this cause; the corporation not
being dissolved, so as "to disable it from exercising its
corporate powers and using its corporate name, for the
purpose of protecting the rights of those beneficially in-

terested in its assets and business,'' in order to bring such corporation into court; we deem the service of process upon one of its last chief officers sufficient for that purpose. If not, we are unable to conceive, under the conditions of this company, upon whom the legal service could be made.

It is insisted that the petition does not state a cause of action and this cause should be reversed for that reason. As to that contention it will suffice to say that, if the conditions exist as to this corporation alleged in the petition (the court found them to be true), it would be a humiliating confession upon our system of jurisprudence to say that courts of equity could afford this creditor no relief.

We have given expression to our views upon this question, as disclosed by the record, which results in the conclusion that W. D. Faulkner was vice president of the defendant company at the time of the service of the writ; as such he was a chief officer of the corporation, and the service upon him was a substantial compliance with the statute, and the judgment of the trial court should be affirmed, and it is so ordered.

All concur.