## HUNN et al. v. UNITED STATES.
### No. 9407.

Circuit Court of Appeals, Eighth Circuit.
July 22, 1932.

Wendell H. Cloud, of Kansas City, Mo. (Fred J. White, of Kansas City, Mo., on the brief), for appellants.

A. B. Lovan, Asst. U. S. Atty., of Kansas City, Mo. (William L. Vandeventer, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

GARDNER, Circuit Judge.

In this case the United States brought suit in equity against the appellants as former stockholders of the Young Bros. Wall Paper & Paint Company, a dissolved corporation, to recover the amount of a deficiency in income taxes alleged to be due from the corporation for the period from March 1, 1919, to December 31, 1919. The parties will be referred to as they were designated in the lower court.

Young Bros. Wall Paper & Paint Company was a corporation organized in March, 1919, and in April, 1920, it filed with the Collector of Internal Revenue for the District of Kansas an income and profits tax return for the period from March 1, 1919, to December 31, 1919, showing a total income and excess profits tax due of $2,486.69. This sum was paid the collector, but the Commissioner of Internal Revenue in February, 1925, assessed an additional income and profits tax against this corporation in the sum of $6,-

074.61, which is the amount sought to be recovered in this suit.

On September 9, 1920, defendants were stockholders in the Young Bros. Wall Paper & Paint Company, and on that date, at a special meeting attended by all the stockholders, a resolution was adopted which provided in part as follows:

"Be It Resolved by the stockholders of The Young Brothers Wall Paper and Paint Company in a special meeting at which all of the stockholders are present, either in person or by proxy, that the proper officers of this company be, and they are hereby authorized to sell, assign and transfer the entire assets of this corporation to The Waggener Paint and Glass Company of Kansas City, Missouri, a Missouri corporation, for and in consideration of the sum of $54,000, and that the charter of this corporation be surrendered and its affairs liquidated and the company dissolved."

At the same time the stockholders agreed that instead of the $54,000 in cash, "which said amount will be the amount to be distributed to the stockholders of the said The Young Brothers Wall Paper and Paint Company, upon the dissolution thereof," they would take as their "distributive shares of said amount of cash" the common stock of the Waggener Paint & Glass Company in the ratio of one and one-fifth shares of the common stock of the Waggener Paint & Glass Company for each share of stock in the Young Bros. Wall Paper & Paint Company. Pursuant to this agreement, in September, 1920, the Waggener Paint & Glass Company took over all the property of the Young Bros. Wall Paper & Paint Company, and the stockholders of the latter company received for each share of stock held in it, one and one-fifth shares of the former company. The Waggener Paint & Glass Company also took over the stock of the Young Company. However, the Young Company was not immediately dissolved, but its charter was permitted to be forfeited by the state of Kansas, the state of its incorporation, in 1921.

After the meeting of September 9, 1920, it was found that the Young Bros. Wall Paper & Paint Company had a lease on certain property which could not be assigned without the consent of the lessor, and negotiations were undertaken with the lessor which ultimately resulted in securing the lessor's consent to an assignment of the lease. Concerning this situation, the attorney who conducted the transactions testified as follows:

"Immediately after we held the meeting we found we would have to keep the company alive because of that lease for a while and that was done because of that situation until September 30th and I think then we must have forgotten about it, to be perfectly frank about it. I think the matter (the dissolution of the company) probably was not paramount and I do not think we took any steps until later in 1921 at which time some notice came in from the secretary of the State of Kansas about a delinquency of a report and we had some correspondence about it, and I remember talking to Mr. Waggener about it, but he was at that time acting for the Waggener Paint and Glass Company and not for the Young Brothers Wall Paper Company."

The only reason for continuing the existence of the Young Company after the disposal of its assets, was to insure the continuance of the lease during negotiations with the lessor. The court found that all the assets of the Young Bros. Wall Paper & Paint Company were transferred pursuant to the resolution above referred to, to the Waggener Company in consideration of the issuance by it to the stockholders of the Young Bros. Wall Paper & Paint Company of stock of the then value of $54,000; and decree was entered adjudging that each defendant was liable for such proportionate share of the deficiency as the number of shares of stock held by him on September 9, 1920, in the Young Bros. Wall Paper & Paint Company bore to the total number of shares then outstanding, and from the decree so entered the defendants prosecute this appeal.

■ In their brief defendants contend that (1) there is not contained in the record proper proof of the deficiency assessment; (2) the deficiency was improperly assessed; and (3) this is not a case for the application of the trust fund doctrine. On oral argument the first two of these contentions were specifically waived and abandoned, so that there remains for consideration only one question. In support of their contention that they are not liable for the deficiency in the tax assessed against the Young Company they urge that there was no transfer of the assets of the Young Company to the Waggener Company in consideration for the issuance of stock to the stockholders of the Young Company, but that there was an exchange of stock of the Young Company for the stock in the Waggener Company, and that the Waggener Company having become the sole stockholder of the Young Company, appropriated the assets of the Young Company, that company receiving nothing for its as-

sets and distributing nothing; and hence, the stockholders of the Young Company received neither the assets nor the proceeds of the assets of that company. There does not appear to be any formal written transfer of the assets from the Young Company to the Waggener Company, except the resolution of September 9, 1920, which directed a transfer of the assets for $54,000. The attorney who handled these transactions testified as follows:

"I think the net assets of the Young Brothers Wall Paper and Paint Company on October 6, the date that the capital stock of Waggener was increased, amounted to fifty-four thousand odd dollars.

"Q. And that was transferred to the Waggener Company? A. Yes, sir, that's right.

"Q. And after that the Young Brothers Company had no assets at all, did it? A. No, sir.

"Q. And there was issued to each one of the stockholders of the Young Brothers, a certain amount of stock of the Waggener Company, was there not? A. The stockholders of the Young Brothers on September 9, 1920, yes, sir."

It also appears from the recitals in the minutes of the stockholder's meeting of the Young Company that the stockholders agreed that the sum of $54,000 should be "the amount to be distributed to the stockholders of the said Young Brothers Wall Paper and Paint Company upon the dissolution thereof," and that they would take as their "distributive shares of said amount of cash" the common stock of the Waggener Company. This rather clearly indicates that the assets of the Young Company were being distributed to its stockholders in contemplation of dissolution. In any event, as a result of the transaction, the stockholders of the Young Company received $54,000 in value of the stock of the Waggener Company, in consideration for permitting the Waggener Company to take over the assets and capital stock of the Young Company, and as a result the Young Company was stripped of all its assets so that it was unable to pay the taxes due the United States. The trial court found that the stockholders authorized the sale of all the assets of the Young Company to the Waggener Company, and that they received in value $54,000, which was in the nature of a distribution of the Young Company's assets, and which was equivalent to a dissolution of the Young Company. We are of the view that this finding and conclusion of the lower court is sustained by the evidence and is sound as a matter of law.

■■ It is, however, contended that as there was no dissolution of the Young Company, the stockholders of that company could not be held liable even though they received in distribution all the company's assets. The Young Company was not immediately dissolved after it had been stripped of all its assets, simply because the lease which it held could not be transferred to the Waggener Company without the consent of the lessor. It performed no corporate function after these transactions, except to hold the lease for the property, which leased property was in fact occupied by the Waggener Company. The matter of perfecting the dissolution was simply forgotten because the Young Company was in fact but a corpse. The minutes of the stockholder's meeting contained declaration "that the charter of the corporation be surrendered and its affairs liquidated and the company dissolved." There can, therefore, be no doubt that the stockholders intended to surrender the franchise of the corporation. The corporate franchise was in fact abandoned and soon thereafter was permitted to be forfeited. Equity regards as done that which ought to be done, and it regards substance rather than form. There was not, to be sure, an immediate technical legal dissolution of the corporation. The mere transfer of all the company's assets would not in itself effect a dissolution; but a dissolution in substance took place when, pursuant to the unanimous action of the stockholders, the company parted with all its property; and all its stock was transferred, and the stockholders directed, as a part of the same transaction, a surrender of its franchise, its liquidation, and dissolution. It suspended all its operations, went into dissolution, and permitted its charter to be forfeited. This conclusively shows a voluntary total abandonment of its franchise. We are of the view that a de facto dissolution resulted. Youree v. Home Town Mut. Ins. Co., 180 Mo. 153, 79 S. W. 175; Perry v. Turner, 55 Mo. 418; State Savings Ass'n v. Kellogg, 52 Mo. 583; Slee v. Bloom, 19 Johns (N. Y.) 456, 10 Am. Dec. 273; Toledo, St. L. & K. C. R. Co. v. Continental Trust Co. (C. C. A.) 95 F. 497.

■ Under these circumstances, we think the stockholders who received the assets of the Young Company were liable to the extent of the value of such assets, for the unpaid federal taxes on the income, and excess profits of the corporation. Pierce v. United

States, 255 U. S. 398, 41 S. Ct. 365, 366, 65 L. Ed. 697; Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289; Russell v. United States, 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255; Chicago, R. I. & P. Railroad Company v. Howard, 74 (7 Wall.) U. S. 392, 19 L. Ed. 117; Updike v. United States (C. C. A.) 8 F.(2d) 913; United States v. Updike (C. C. A.) 32 F.(2d) 1; United States v. Armstrong (C. C. A.) 26 F. (2d) 227; Jahn v. Champagne Lbr. Co. (C. C.) 157 F. 407; Capps Mfg. Co. v. United States (C. C. A.) 15 F.(2d) 528; Hatch v. Morosco Holding Co. (C. C. A.) 50 F.(2d) 138; United States v. Garbutt (C. C. A.) 35 F.(2d) 924. It is true that in most of the cases cited, the corporation was legally dissolved, while in the instant case, at the time the defendants received their distributive share of its assets, a de facto dissolution only had occurred. As already observed, its legal dissolution, however, was in contemplation as a part of the transaction, and its charter was subsequently forfeited; and for all practical intents and purposes the Young Company went out of existence when its assets and stock were taken over by the Waggener Company. The equitable principle which charges the stockholder to whom has been distributed the assets of a dissolved corporation, liable for the debts of such corporation to the extent of the value of the property so received, can be invoked where a corporation divests itself of all its property, even though dissolution may not immediately follow. In Pierce v. United States, supra, cited with approval in Phillips v. Commissioner, supra, the Supreme Court of the United States held the stockholders of the Waters Pierce Oil Company liable to pay a fine of $14,000, imposed on that company as the result of a criminal prosecution. An execution was issued on the judgment against the Waters Pierce Oil Company and returned unsatisfied, whereupon a bill in equity was filed against the company, the trustees, and stockholders. So far as appears, the company had not been dissolved. In the course of the opinion by Mr. Justice Brandeis, the court said: "A corporation cannot by divesting itself of all property leave remediless the holder of a contingent claim, or the obligee of an executory contract (Baltimore & O. Teleg. Co. v. Interstate Teleg. Co., 4 C. C. A. 184, 54 F. 50), or the holder of a claim in tort (Hastings v. Drew, 76 N. Y. 9; Jahn v. Champagne Lumber Co. (C. C.) 157 F. 407); and there is no good reason why the United States with a claim for penalties should be in a worse plight."

So, in the instant case, we perceive no reason why the United States may not follow the proceeds of the assets of the Young Company into the hands of the stockholders, even though the corporation may not, at the time the stockholders received these funds, have been legally dissolved. That corporation was no longer a going concern. If, by the mere device of failing legally to dissolve the corporation, its stockholders may appropriate its assets, thus rendering it incapable of paying its obligations, and thereby defeat the rights of creditors to recover either from the corporation or from themselves, then a new door will have been opened for the perpetration of shameless frauds upon unsuspecting creditors of corporations. We cannot believe that for such a wrong a court of equity is impotent to grant relief. The defendants took these funds charged with the trust in favor of the creditors of the Young Company, and a court of equity will enforce and compel their application to the satisfaction of the corporation's debts and liabilities. The judgment appealed from is, therefore, affirmed.