In the Matter of **GREAT PLAINS ROYALTY CORPORATION,** Bankrupt (two cases).

**SOURIS RIVER TELEPHONE MUTUAL AID CORPORATION,** Appellant,

v.

Myron **ATKINSON,** Trustee, Appellee.

**NORTH CENTRAL ELECTRIC COOPERATIVE, INC.,** Appellant,

v.

Myron **ATKINSON,** Trustee, Appellee.

Nos. 72–1403, 72–1404.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 20, 1972.

Decided Jan. 16, 1973.

Pringle & Herigstad, Minot, N. D., for appellants.

Frank F. Jestrab and John R. Gordon, Bjella & Jestrab, Williston, N. D., on brief for appellee.

Before LARAMORE, United States Court of Claims Judge,* and BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

We here consider whether two REA-financed cooperatives, operating under bylaw policies of general application, may decline to refund patronage capital credited to the estate of a bankrupt and defunct corporation when it would refund such capital to the estate of an individual patron should he die. In the context of an adjudication in bankruptcy, the Referee, Gordon M. Thompson, and the district court on review, Judge VanSickle, held the patronage capital refundable to the corporation because the circumstances of its bankruptcy amounted to "de facto" death. The cooperatives appeal. We affirm.

The appellant-cooperatives, Souris River Telephone Mutual Aid Corporation (Souris River) and North Central Electric Cooperatives, Inc. (North Central), are North Dakota cooperative corporations governed by provisions of the North Dakota Cooperative Laws. *See generally,* N.D.Cent.Code, chs. 10–13 (applicable to electric cooperatives) and 10–15 (applicable to cooperative associations in general). Both cooperatives provide utility services in rural areas—Souris River, telephone communications, and North Central, electric power at retail. Both have obtained loans for plant construction from the federal government through the Rural Electrification Administration (REA). The assets of both are mortgaged to the United States to secure these loans.

The REA has made recommendations to these and other cooperatives regarding "nonprofit operations." The appellants have adopted bylaws substantially

---

* Sitting by designation.

in the form recommended by the REA. Under these bylaws, they have established a "capital credits" plan whereby all amounts received from patronage in excess of operating costs and expenses are credited to the member-patron's account as though these amounts had been refunded to the patron in cash and then returned to the cooperative for inclusion in its capital account.[1] The bylaws further provide that the boards of directors, at their discretion, may retire patronage capital credits on a first-in, first-out basis.[2] Where no financial impairment will result, the bylaws permit an exception to the "first-in, first-out" rule, by allowing early retirement of a patron's credits upon his death, where the board of directors in its discretion and "acting under policies of general application * * *" approves.[3]

With this background, we turn briefly to the record here. It shows that both Souris River and North Central are in sound financial condition and that each has consistently authorized prepayment of capital credits to the estates of individual patrons who have died over the past decade. The bankrupt, Great Plains Royalty Corporation, as a patron-member, acquired substantial capital credits in each cooperative, from 1961 to the date of its bankruptcy on April 12, 1968. The corporation, prior to its adjudication in bankruptcy, had incurred obligations to the respective cooperatives for telephone and electric services, which had not been paid. After bankruptcy, the trustee continued to require these services. The cooperatives filed claims as general creditors against the bankrupt's estate for payment of these pre-bankruptcy obligations and as creditors entitled to priority for services furnished in the post-bankruptcy period. The bankrupt's trustee, as a setoff and counterclaim to the claim of each cooperative, sought early retirement of the patronage capital credited to the corporation, contending that, in each case, a bal-

---

1. The "capital credits" bylaw in part, provides:

 All such amounts in excess of operating costs, expenses and education fund deductions, at the moment of receipt by the Cooperative, are received with the understanding that they are furnished by the patrons as capital. The Cooperative is obligated to pay by credits to a capital account for each patron all such amounts in excess of operating costs and expenses. The books and records of the Cooperative shall be set up and kept in such a manner that at the end of each fiscal year the amount of capital, if any, so furnished by each patron is clearly reflected and credited in an appropriate record to the capital account of each patron, and the Cooperative shall within a reasonable time after the close of the fiscal year notify each patron of the amount of capital so credited to his account. All such amounts credited to the capital account of any patron shall have the same status as though they had been paid to the patron in cash in pursuance of a legal obligation to do so and the patron had then furnished the Cooperative corresponding amounts for capital.

2. This bylaw provision states:
 If, at any time prior to dissolution or liquidation, the Board of Directors shall determine that the financial condition of the Cooperative will not be impaired thereby, the capital then credited to patrons' accounts may be retired in full or in part. Any such retirements of capital shall be made in order of priority according to the year in which the capital was furnished and credited, the capital first received by the Cooperative being first retired.

3. The exception, in its entirety, reads:
 Notwithstanding any other provision of these bylaws, the Board of Directors, at its discretion, shall have the power at any time upon the death of any patron, if the legal representatives of his estate shall request in writing that the capital credited to any such patron be retired prior to the time such capital would otherwise be retired under the provisions of these bylaws, to retire capital credited to any such patron immediately upon such terms and conditions as the Board of Directors, *acting under policies of general application,* and the legal representatives of such patron's estate shall agree upon; provided, however, that the financial condition of the Cooperative will not be impaired thereby. [Emphasis added.]

ance was due the trustee for the excess of capital credits in favor of the bankrupt's estate.

In sustaining the trustee's contentions, the bankruptcy court ruled the bankrupt corporation to be "de facto dead." Accordingly, the court reasoned that each cooperative became obligated to pay capital credits to the trustee of the bankrupt's estate pursuant to the bylaw provision authorizing the cooperative board of directors to retire capital credits "upon the death of any patron." We affirm this ruling.

North Dakota law authorizes a capital credits bylaw for nonprofit cooperatives. The relevant statute specifies that, after deduction of expenses and other permitted allocations of net proceeds, the cooperative shall distribute the remainder to patrons "in accordance with the ratio which their patronage bears to total patronage." N.D.Cent.Code § 10–15–33(3)(a). This distribution may be in "cash [or] credits * * *." N.D. Cent.Code § 10–15–33(5).

Discrimination in distributions of remaining net proceeds is prohibited, except as between member- and nonmember-patrons in specified circumstances. The statute provides:

> None of the remainder shall constitute income to the co-operative, but all thereof shall be distributed and paid in accordance with the ratio which individual patronage bears to total patronage, either to all patrons, to member patrons only, or to all patrons with nonmembers receiving a lower proportion than members, as the bylaws may provide. *There shall be no other distinction between members and nonmembers*, but distribution may be based on business done with particular departments, or in particular commodities, supplies or services, or upon classification of business according to type or nature thereof. [N.D.Cent.

Code § 10–15–33(4)(b) (emphasis added).]

█ The bylaws of each cooperative, in this case, specify that their terms constitute a contract between the cooperative and each patron.[4] The discretion granted the directors in accelerating retirement of capital credits upon the death of any patron must be exercised under policies of general application. Yet the undisputed record shows that both Souris River and North Central in recent years have accelerated payment of capital credits upon the death of an individual patron while denying similar treatment to a corporation which has dissolved or become bankrupt. Of course a corporation does not die in the organic sense, but it can cease to exist. The bylaw speaks in terms of the "death of any patron." In implementing this bylaw and denying accelerated payment of capital credits to defunct corporations which are "de facto dead," the cooperatives have, in effect, granted individual patrons a preference over corporate patrons in the liquidation of capital credits. Such a preference violates both the statutory proscription against discrimination between patrons in the payment of patronage refunds, N.D.Cent.Code § 10–15–33(4)(b), and the bylaw requirement that such refunds be administered according to "policies of general application."

The record shows that the reason for accelerating retirement of capital credits at death is "to facilitate the settlement of estates." Minutes of a meeting of the board of directors of North Central indicate that the policy of the cooperative is to pay capital credits on the death of the husband "as an accommodation to the family * * *."

█ A corporation which has formally dissolved or become bankrupt leaving an estate to be administered for the benefit of its shareholders and creditors be-

---

4. The bylaws state:
 The patrons of the Cooperative, by dealing with the Cooperative, acknowledge that the terms and provisions of the articles of incorporation and bylaws shall constitute and be a contract between the Cooperative and each patron, and both the Cooperative and the patrons are bound by such contract, as fully as though each patron had individually signed a separate instrument containing such terms and provisions.

comes civilly dead. *See* Graham v. Railroad Company, 102 U.S. 148, 160–161, 26 L.Ed. 106 (1880); Hentschel v. Fidelity & Deposit Co. of Md., 87 F.2d 833, 836 (8th Cir. 1937); Hunn v. United States, 60 F.2d 430, 432 (8th Cir. 1932); Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Tex. 143, 24 S.W. 16 (1893).

For the purpose of accelerating refund of capital credits, we believe the estate of such a corporation to be entitled to the same treatment as that given to the estate of an individual patron who dies. Accordingly, the cooperative by-law provision here in question permitting retirement of capital credits on the "death of any patron" must be construed to apply to the claims of the trustee of the bankrupt corporation against each cooperative.

The cooperatives, however, argue that a bankrupt corporation occupies a status no different from that of an individual bankrupt, who, under the questioned by-law provision would not qualify for an acceleration of his capital credits. This comparison is not apt. For an individual bankrupt continues to live and therefore may continue his patronage. But here, as the Referee observed, the bankrupt corporation is unlikely ever to "come back to 'life' in the sense of again doing business."

The cooperatives further rely on Evanenko v. Farmers Union Elevator, 191 N.W.2d 258 (N.D.1971), and similar cases [5] for the proposition that patronage dividends credited to cooperative patrons do not constitute an indebtedness due the patron unless the board of directors of the cooperative have taken specific action authorizing payment. We agree that *Evanenko* stands for this proposition, but this appeal presents a question not controlled by *Evanenko*.

We affirm the ruling of the bankruptcy court.

5. In re Farmers Federation Coop., Inc., 243 F.Supp. 650 (D.N.C.1965), vacated on other grounds sub nom. Columbia Bank for Coops. v. Lee, 368 F.2d 934 (4th Cir. 1966); Claassen v. Farmers Grain Coop., 208 Kan. 129, 490 P.2d 376 (Kan.1971); Clarke County Coop. v. Read, 243 Miss. 879, 139 So.2d 639 (1962).