*Decision will be entered under Rule 50.*

PLAYER REALTY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10362.    Promulgated August 20, 1947.

*A. J. Ellington, Esq.*, for the petitioner.
*George J. LeBlanc, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: The Commissioner determined a deficiency in the amount of $4,355.25 in petitioner's excess profits tax for the taxable year ended December 31, 1942. All of the facts were stipulated and we find them to be as stipulated.

The single question presented is whether respondent erred in computing petitioner's excess profits credit under the invested capital method by excluding from petitioner's borrowed invested capital the

amounts of mortgages on real property, executed by petitioner but assumed by purchasers of the mortgaged real property.

Petitioner is a corporation, organized under the laws of North Carolina in 1936. Its principal office is in Fayetteville, North Carolina, and its income and excess profits tax returns for the year 1942 were filed with the collector of internal revenue for the district of North Carolina.

During the year 1942, and earlier, petitioner was engaged in the business of constructing and selling houses in Cumberland County, North Carolina. Prior to 1942 petitioner had borrowed various sums from Southeastern Mortgage Co., the unpaid balance of which on January 1, 1942, was $96,494.92. During 1942 petitioner borrowed from Carolina Housing & Mortgage Corporation various sums of money, aggregating $102,450.

Each of the loans was evidenced by a promissory note, payable in consecutive monthly installments, and was secured by an individual deed of trust on a house constructed by petitioner. The loans were insured under the National Housing Act. Each of the deeds of trust contained the following provision:

That no sale of the premises described above and no forebearance on the part of the party of the third part [the lending agency] and no extension of the time for the payment of the debt secured hereby given by the party of the third part shall operate to release, discharge, modify, change or affect the original liability of the party of the first part [petitioner] herein, either in whole or in part.

During the year 1942, or prior thereto, all the properties described in the various deeds of trust securing the notes executed by petitioner in evidence of the loans were sold to various individuals. The properties so sold were conveyed to the purchasers by warranty deeds, each of which contained the following provision:

This deed is made subject to Deed of Trust from Player Realty Company to * * * Trustee, for [mortgagee], on the above described property in the amount of $————————, which the parties of the second part [purchasers] hereby assume and agree to pay.

The deed of trust so referred to was one of the deeds of trust executed and delivered by petitioner as security for the loans mentioned above, and the amount inserted in the agreement was the face amount due on the particular note secured by one of the deeds of trust.

Petitioner included the amounts of the loans referred to above in its borrowed invested capital, after the dates of the sales of the property, for the purpose of computing its excess profits credit, relying on section 719 (a) and 719 (a) (1) of the Internal Revenue Code and contending that section 35.719–1 of Regulations 112 is not a proper interpretation of these sections of the code.

Section 719 (a) and 719 (a) (1) of the code provides for borrowed

invested capital as an element of equity invested capital, in the following language:

(a) BORROWED CAPITAL.—The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * * *

In section 35.719-1, Regulations 112, borrowed capital is defined to mean:

(a) Outstanding indebtedness (other than interest, but including indebtedness assumed or to which the taxpayer's property is subject) of the taxpayer which is evidenced by a bond, a promissory note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust * * *

\*　　\*　　\*　　\*　　\*　　\*　　\*

In order for any indebtedness to be included in borrowed capital it must be bona fide. It must be one incurred for business reasons and not merely to increase the excess profits credit. If indebtedness of the taxpayer is assumed by another person it ceases to be borrowed capital of the taxpayer. For such purpose an assumption of indebtedness includes the receipt of property subject to indebtedness.

\*　　\*　　\*　　\*　　\*　　\*　　\*

It is that provision of the regulations which states that indebtedness of the taxpayer assumed by another person ceases to be borrowed capital of the taxpayer, for the purposes of this statute, to which petitioner objects.

Petitioner argues that the indebtedness which it seeks to include in its borrowed invested capital falls exactly within the requirements of the statute; that it represents unpaid balances of loans, represented by promissory notes and secured by deeds of trust; that the indebtedness was bona fide and incurred for business reasons.

These facts are all stipulated and are not to any extent controverted, except to the extent inherent in respondent's contention that the amount in controversy is no longer such an indebtedness as the statute comprehends, since purchasers of the properties have assumed and agreed to pay the indebtedness.

Petitioner urges us to consider the provision of its contracts with the lending institutions that the sale of the property will not relieve it to any extent whatever from its liability for payment of the debt. It points out that in North Carolina it has been held that, even though the purchaser assumes and agrees to pay the debt, the mortgagor remains personally liable to the mortgagee, citing *Keller* v. *Parrish*, 147 S. E. (N. C.) 9; *Brown* v. *Turner*, 162 S. E. (N. C.) 608; *Baber* v. *Hanie*, 80 S. E. (N. C.) 57. These cases, and others, do establish that proposition, and the further proposition that, in such cases, as between themselves the purchaser becomes the principal debtor, and

the mortgagor is liable only secondarily as a surety. See also Minor on Real Property, sec. 647; Tiffany on Real Property, sec. 528.

The real question at issue, then, is not whether the alleged indebtedness is evidenced in proper form as required by statute, but whether it is such an "outstanding indebtedness" as the statute contemplates as an element of borrowed invested capital; or, to put it in a different way, whether the term embraces contingent or secondary liability for a debt.

The word indebtedness, as has been said, "when used in a statute, lacks the fixed import of a word of art. Its meaning may be either broad or narrow. * * * As is to be expected, the only possible criterion of choice between * * * two conflicting interpretations of the word is the aim of the enactment which employs it." *Commissioner* v. *Tennessee Co.*, 111 Fed. (2d) 678.

The excess profits tax act has for its purpose the taxation of profits in excess of normal profits. The invested capital method of computing the amount of normal profits allows a normal return on capital invested in the business and taxes the profits in excess thereof. Invested capital includes both equity invested capital and borrowed invested capital, and borrowed invested capital is defined to include indebtedness evidenced by written instruments.

The question whether the words "outstanding indebtedness" includes indebtedness which has been assumed by others and for which the taxpayer thereupon becomes only secondarily liable may therefore be reasonably resolved by ascertaining whether, after the property in which the borrowed money was invested is sold, the purchaser assuming the indebtedness, the borrowed money is any longer invested as capital in the taxpayer's business.

We think the answer is obvious, that it is not. The money has been invested in the business and has resulted in the acquisition of a physical asset. Upon the sale of that asset the taxpayer realizes the only profit it will ever realize from the investment of that capital. Thereafter, that capital is invested not in the taxpayer's business, but in an asset belonging to another, who has agreed with the taxpayer to assume liability for the repayment of the borrowed capital. If the purchaser of that real estate were a corporation subject to the excess profits tax, it would certainly be entitled to use that borrowed capital as a part of its invested capital. And further, in the instant case, if the purchasers had paid cash for the properties and petitioner had repaid the lending agencies from those receipts, it could not contend the capital was thereafter invested in its business. Here instead, the purchasers, as part of the consideration, assumed and agreed to pay the indebtedness precisely because the capital was invested in property then and

thereafter owned and used by them and not in the property or business of the taxpayer.

We are, therefore, of the opinion that, by the use of the term "outstanding indebtedness," the statute contemplates the inclusion in invested capital of outstanding indebtedness, in the form required, for capital borrowed and invested in the business of the taxpayer only so long as it is so invested. Where, as here, the property in which the capital has been invested is sold, and the purchaser assumes the original borrower's liability for repayment of the loan, the indebtedness is not thereafter such an "outstanding indebtedness" as the statute comprehends. The regulation is not therefore erroneous.

*Decision will be entered for respondent.*