OPINION. TURNER, Judge: With respect to the liability of Bates Motor Transport Lines, Inc., for the deficiencies herein, only one question is presented. That is as to the effect to be given for the liability on the part of Bates to repay to the Federal Government the amounts by which the freight payments made to it by the Government for transporting freight in 1942 and 1944 exceed the lowest net land grant rate for the shipments covered thereby. In its returns, Bates excluded the amounts in question from gross income. The respondent increased income by the amounts excluded, and the petitioner now claims that in computing net income the said amounts are deductible. The respondent takes the position that the entire amounts of the charges made by Bates for the transportation of Government property in 1942 and 1944 are includible in income, without any exclusion of amounts which under the land grant rate agreement would have to be returned to the Government, and further, that Bates was not entitled to deduction in such years for any portion of the amounts set up in its reserve account to cover such refunds. Where a taxpayer keeps its accounts and makes its returns on an accrual basis, its right to receive, and not the actual receipt of, income determines the inclusion of an amount in gross income. Spring City Foundry Co. v. Commissioner, 292 U. S. 182. Consequently, where the right to receive income arises in one year but the income is actually received some years later, the amount is' income for the year in which the right to receive payment arose, and not for the year in which payment was actually made. Continental Tie & Lumber Co. v. United States, 286 U. S. 290. • If in a given year a taxpayer receives earnings under a claim of right and without restriction as to disposition, he has received income in that year which he is required to report, even though it may still be claimed that he is not entitled to the said earnings, and even though he may still be adjudged liable to restore them, and this is true irrespective of whether the taxpayer keeps his books on a cash receipts and disbursements basis or on an accrual basis. North American Oil Consolidated v. Burnet, 286 U. S. 411. In the instant case, it is apparent from the facts that in both 1942 and 1944 the petitioner received payment of amounts to which it was not entitled and to which it asserted no claim. As a matter of fact, .Bates industriously endeavored to obtain information which would permit it to bill the Government only for the amounts to which it was entitled, under the land grant rate agreement, as charges for transporting the shipments in question. Its efforts in that direction were of no avail, however, and it was required by Government officials to bill the Government in full at its prevailing tariffs and accept payments in full, pending determination by the General Accounting Office of the amount to be refunded. Regardless of the fact that none of the moneys covered by the bills rendered as above described were, when received, earmarked for repayment to the Government but were commingled with petitioner’s own unfettered funds, it seems to us apparent that it may not propex-ly be said that petitioner received under any claim of right and as its own amounts which both it and the Government representatives were in agreement would have to be paid back, and, such being the circumstances, that as to those amounts there was any receipt of earnings by petitioner. It was at all times obligated to make repayment to the Government of the amounts which the General Accounting Office should determine to be due, and it never at any time felt or claimed that such amounts belonged to it. It is accordingly our opinion that the theory on which petitioner made its returns was sound and that the exclusion of such items from gross income is the proper method of dealing with them. See and compare Uniform Printing & Supply Co. v. Commissioner, 88 F. 2d 75; Broadcast Measurement Bureau, Inc., 16 T. C. 988; and Horace Mill, 5 T. C. 691. Holding as we do that the amounts which petitioner was to repay the Government never properly became a part of its gross income, we have no occasion to rule upon the question as to the accrual of a liability for deduction purposes as posed. In determining the amounts which were excludible from petitioner’s gross income for the years in question, we are, of course, limited to the evidence of record. The petitioner still persists in its claim that the amount for 1942 is $7,262.91 and for 1944, $14,117.62. Admittedly, those amounts were estimates and the proof falls far short of substantiating those estimates. Beyond the estimates, the only proof is of the amounts which petitioner has since been required to refund. With the 1942 accounts completely audited by the General Accounting Office, Bates has been required to refund only $1,-160.82 in respect of its entire 1942 business. With 80 per cent of the 1944 accounts audited, it has been required to refund only $39.40. We are accordingly unable to find that when petitioner’s business was concluded at the end of 1942 and 1944, the amounts which it and the Government representatives were agreed would have to be paid back have been shown to have been in excess of those subsequently determined by the General Accounting Office as being repayable. At the hearing and on brief, Standard has admitted that it is liable as transferee for any tax liability determined to exist against Bates. Chaddick denies liability as a transferee of assets of Bates, claiming that no assets were transferred to him and contending that the mere fact that he agreed to and did exchange his shares of stock in Bates for shares of stock in Standard affords no basis for a conclusion that he was a transferee. The agreement of September 18, 1944, pursuant to which Bates transferred its assets to Standard, shows that Bates was to transfer all of its assets to Standard and that Bates, thereupon, would be liquidated. This would leave it without assets. As consideration for the assets, Standard was (1) to assume all of the liabilities of Bates and (2) to issue to the stockholders, of Bates shares of its (Standard’s) capital stock in exchange, share for share, for the shares of stock they held in Bates. From the foregoing, it is apparent that the consideration .to be given by Standard was the assumption of Bates’ liabilities, plus shares of its stock equal in number to the outstanding shares of stock in Bates. The fact that the arrangement provided for Standard to issue such shares directly to the stockholders of Bates, who were to surrender to Standard the shares of stock they held in Bates, was no different in effect than if Standard had issued the shares directly to Bates, who, in turn, had called in its outstanding stock and in liquidation distributed to its stockholders the shares of stock in Standard. The result in each instance would be for the stockholders of Bates to receive the stock in Standard and leave Bates insolvent and without funds to pay its debts. The short cut employed by which Standard issued its stock directly to the stockholders of Bates in nowise relieved those stockholders of their liability as transferees of the assets of Bates. Cf. E. H. Dobrin, 27 B. T. A. 611, and Homer 8. Warren, 31 B. T. A. 1041. Eeviewed by the Court. Decisions will be entered under Bule SO.