S. Loewenstein & Son, a Michigan Corporation, Petitioner, *v.*
Commissioner of Internal Revenue, Respondent.

Docket No. 40607.   Promulgated January 29, 1954.

*R. M. O'Hara, Esq., Joseph H. Jackier, Esq.*, and *Benjamin E. Jaffe, Esq.*, for the petitioner.

*Roy E. Graham, Esq.*, for the respondent.

OPINION.

WITHEY, *Judge:* The first question for determination is whether the subsidies, amounting to $66,655.06, actually received by petitioner in 1945 for the months of July, August, and September of that year and which were never repaid constituted taxable income to the petitioner for 1945. The petitioner contends that since the credit balances in the account of A & P on certain days during the months of July, August, and September 1945 were in excess of 5 per cent of its total balances for the respective months, it was ineligible to receive the subsidies for those months and that it was so determined by R. F. C.; that since it was ineligible to receive them, it had no right to receive them; that it is the right to receive income and not the actual receipt thereof that determines whether a taxpayer keeping books on the accrual basis has taxable income; and that since it kept its books on the accrual basis and in 1945 had no right to receive the subsidies in question, they did not constitute income to it for that year. The petitioner further contends that the income tax law contemplates that tax liability is to be determined for annual periods on the basis of facts existing at the end of each of such periods and that if effect is given to the developments which occurred in December 1945 and prior to the close of the taxable year, it must be concluded that the subsidies in question did not constitute taxable income for 1945. The respondent takes the position that the petitioner acting in good faith filed claims for and received the subsidies in question; that having so received them, it received them under a claim of right; and that under the rule of *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *United States* v. *Lewis*, 340 U. S. 590; and *Edwin E. Healy and Gordon W. Hartfield* v. *Commissioner*, 345 U. S. 278, they constituted income to the petitioner for the year in which received.

In *North American Oil Consolidated* v. *Burnet, supra*, the taxpayer, during the progress of litigation relating to the beneficial ownership of certain property, received in 1917 certain income arising from the property. The litigation continued until 1922 when it terminated favorably to the taxpayer. In holding that the income received by the taxpayer in 1917 was taxable to it in that year, the Supreme Court, after stating that it was not material for the purposes of the case whether the taxpayer's return was filed on the cash basis or on the accrual basis, said:

If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * *

In *United States* v. *Lewis, supra,* the taxpayer received in 1944 an employee's bonus which a State court in 1946 decided was improperly computed. As a result of that decision, the taxpayer in 1946 paid to his employer approximately one-half of the amount of the bonus. In holding that the full amount of the bonus was income to the taxpayer in 1944, the Supreme Court applied the claim of right rule and held that an exception to the rule could not be made merely because a taxpayer was mistaken as to the validity of his claim.

The Supreme Court again applied the claim of right rule in *Edwin E. Healy and Gordon W. Hartfield* v. *Commissioner, supra.* There officer-stockholders, as transferees, paid deficiencies in tax of corporations which arose as the result of disallowance of part of excessive salaries paid to them in an earlier year. In holding that the full amounts received by the officer-stockholders as salaries were income to them in the year of receipt, the Court said:

There is a claim of right when funds are received and treated by a taxpayer as belonging to him. The fact that subsequently the claim is found to be invalid by a court does not change the fact that the claim did exist. A mistaken claim is nonetheless a claim * * *.

In filing its claims for the subsidies in question the petitioner took the position, and made claim, that it was entitled to the subsidies. On the basis of the representations made by petitioner, its claims were allowed and the subsidies were paid to it. So far as appears, the petitioner received them as funds belonging to it and without any restriction whatever as to the use or disposition it might wish to make of them. The petitioner's balance sheet as of December 31, 1945, was put in evidence. It shows that petitioner's cash at the close of 1945 amounted to only $780. From that it appears that, upon their receipt, the petitioner treated the subsidies as its own funds and expended them as it saw fit.

The evidence shows that in the early part of December 1945 the examiner from R. F. C., who was investigating the petitioner's affairs, informed an officer of the petitioner and petitioner's office manager that it would appear that the petitioner's eligibility to receive the subsidy payments made for the months of July, August, and September 1945 was voided because of the situation that existed in the A & P account during those months, but that decision of the question of the petitioner's ineligibility to receive the payments was to be given only by the Washington office of R. F. C. The evidence also shows that at that time there was some conversation between the three about petitioner's repayment of the subsidies. The evidence further indicates that petitioner never controverted the existence of the situation that existed in the A & P account nor questioned the correctness of the regulations which precluded the payment of subsidies for periods in which such a situation existed. However, there is nothing to indicate that

at any time during 1945 there was any admission by any of petitioner's officers or employees to R. F. C. or any of its employees that the petitioner was not entitled to the subsidies in question. Nor is there anything to indicate that any expression of willingness to, or offer to, repay was made on behalf of the petitioner either to R. F. C. or any of its employees, including the examiner, either at the time of the above mentioned conversation or later in December 1945. The petitioner's balance sheet as of the end of 1945 shows as an account receivable subsidies due from R. F. C. in the amount of $195,292.12 or approximately three times the amount of the subsidies here involved. At no time, either in 1945 or later, does the petitioner appear to have directed or requested R. F. C. to offset the subsidies in question, or any part thereof, against the subsidies shown in petitioner's balance sheet as owing to it by R. F. C. While the petitioner's office manager, Doherty, caused entries to be made in petitioner's books as of December 31, 1945, during the closing of the books which occurred between January 1 and January 15, 1946, to show a liability owing from petitioner to R. F. C. in the amount of the subsidies in question, we can not find in the situation presented that the entries so made represented any liability which the petitioner had admitted during 1945 or that the entries themselves constituted any admission of such liability. From the circumstances presented, it appears that at the end of 1945 the petitioner was content to let the situation remain as it had been theretofore and await the decision of the Washington office of the R. F. C. as to its ineligibility to have received them.

Considering the situation here presented in the light of the holdings of the Supreme Court in the above mentioned cases, we think that it must be concluded that the petitioner received the subsidies in question under a claim of right and that having so received them they constituted income to it when received. Accordingly, we sustain the respondent's determination that the subsidies were income to the petitioner in 1945.

The situation here is unlike that in *Bates Motor Transport Lines, Inc.*, 17 T. C. 151, affd. 200 F. 2d 20, relied on by petitioner. In that case the taxpayer carried freight for the Federal Government under an agreement that its charges would not exceed the lowest land grant railroad rate available to the Government over any combination of carriers between the points of shipment and the points of destination. The taxpayer's efforts to obtain such land grant rates from the Government for the purpose of billing the Government for freight carried were unsuccessful and it was required to bill the Government for the shipments at its prevailing rates and accept payment therefor in full pending determination by the General Accounting Office of the amount or amounts it would be required to refund under the agreement. The

taxpayer never at any time felt or claimed that the amounts it would be required to refund under the agreement belonged to it. There, it was held that the excess of the amounts collected over the lowest land grant rate for the shipments in question which it was obligated to refund to the Government did not constitute gross income to the taxpayer. Clearly the instant case presents no such an arrangement as was involved in that case.

The petitioner contends that if the subsidies in question were income to it at the time of their receipt in 1945, then it was entitled to accrue on its books and deduct in its income tax return for 1945 the amount of the subsidies as a liability to R. F. C. for the repayment of them. The respondent takes the position that at the end of 1945 the petitioner had no fixed liability to repay any settled amount of the subsidies and that, at most, petitioner's liability to make repayment of any amount was merely contingent.

The propriety of an accrual must be judged by the facts which the taxpayer knew or could reasonably be expected to know at the closing of its books for the taxable year. *Baltimore Transfer Co.*, 8 T. C. 1. However, as was pointed out by the Supreme Court in *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281, it is now settled that a taxpayer may not accrue as an expense an item, the amount of which is unsettled or the liability for which is contingent, and may not allocate outgo to a year other than the year in which "the obligation to pay, has become final and definite in amount."

In addition to the fact that at the end of 1945 R. F. C. had made no decision as to the petitioner's ineligibility to receive the subsidies in question, there had been in effect since June 23, 1945, Public Law No. 88, which provided in section 2 thereof as follows:

Any slaughterer who heretofore or hereafter shall have received extra compensation payments under Livestock Slaughter Payments Regulation Numbered 3 of Defense Supplies Corporation (adopted pursuant to directives of the Director of Economic Stabilization) when such slaughterer was not in a class eligible for such extra compensation payments, shall be relieved, in whole or in part, of obligation to repay the amount thereof and shall be entitled to receive, in whole or in part, the amount of such extra compensation payments repaid by such slaughterer to, or withheld by Defense Supplies Corporation on account of such extra compensation payments, to the extent that it is determined by the Director of Economic Stabilization, or any agency of the Government authorized by him, that it would be inequitable for Defense Supplies Corporation to require repayment by such slaughterer or to retain the amounts so repaid or withheld, provided such Director or agency also determines that such slaughterer believed reasonably and in good faith that he was eligible to receive such extra compensation payments: *Provided*, That any determination by such Director or agency under this section shall be reviewable by the Emergency Court of Appeals under such rules as such court may prescribe.

Under Directive 62 issued by the Director of Economic Stabilization on July 3, 1945, O. P. A. was authorized to handle all proceedings

for relief brought under section 2 of Public Law No. 88. On August 13, 1945, O. P. A. issued Procedural Regulation No. 15 prescribing the procedure to be followed by ineligible slaughterers seeking relief under Public Law No. 88.

From the foregoing it is apparent that for some time prior to the time the petitioner filed its claims for the subsidies in question Congress had provided a method by which slaughterers could be relieved of liability for making repayment of subsidies received at times when they were ineligible to receive them. Although the petitioner's office manager, who handled matters of petitioner relating to subsidies, testified that he did not learn of such provision by Congress until during February 1946, we think the petitioner could reasonably have been expected to know of it at the end of 1945. With such provision having been available to the petitioner during, and at the end of, 1945 and the petitioner's application for relief from repayment having been allowed in full by O. P. A. promptly after it was filed in April 1946, the petitioner's relief from repayment can not be attributed to a change in the law after 1945 or to an official interpretation of the law not reasonably to have been expected in 1945 so as to create after that year independent operative facts for accounting purposes. Under the circumstances we do not think it could have been correctly said at the close of 1945 that petitioner's liability for the repayment of the subsidies was an "obligation to pay [which] has become final." The contentions of the petitioner as to this issue are denied.

The remaining issue is whether the average daily outstanding sight drafts, amounting to $64,675.71, drawn on petitioner in connection with its purchases of cattle during 1945 under the circumstances set out in our findings constituted borrowed capital within the meaning of section 719 (a) (1) of the Internal Revenue Code.[1] In order to resolve that issue it must be determined whether said amount represented an outstanding indebtedness of the petitioner for 1945 and whether such outstanding indebtedness was evidenced, in this instance, by a bill of exchange. *Hunt Foods, Inc.*, 17 T. C. 365, affd. 204 F. 2d 429; *Wm. A. Higgins & Co.*, 4 T. C. 1033.

The petitioner contends that having purchased and received delivery of the cattle, it had become unconditionally obligated to pay the sellers therefor, and that since the drafts were drawn for the amount of the purchase price of the cattle, they represented an outstanding indebtedness owing by it for the cattle. The petitioner contends that therefore the drafts evidenced its indebtedness to the sellers of the

---

[1] SEC. 719. BORROWED INVESTED CAPITAL.

(a) BORROWED CAPITAL.—The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * * *

cattle and qualified as bills of exchange within the intendment of section 719 (a) (1) of the Code. The respondent does not deny that the petitioner had become unconditionally obligated to pay, and was indebted to, the sellers for the cattle and that the drafts were drawn for the purchase price of the cattle. Nor does he deny that the drafts were bills of exchange. However, he contends that prior to the petitioner's acceptance and payment of the drafts, the petitioner's indebtedness for the cattle was evidenced by an account receivable entry on the books of the seller and an account payable entry on the books of the petitioner and that, consequently, there never was an outstanding indebtedness of the petitioner evidenced by a bill of exchange within the purview of section 719 (a) (1). In substance, the respondent's contention here is the same as that which was made by him in *Hunt Foods, Inc., supra,* and *Wm. A. Higgins & Co., supra,* and there rejected. In denying essentially the same contention made by respondent, the Court of Appeals for the Ninth Circuit, in affirming our decision in *Hunt Foods, Inc., supra,* said:

Congress in using the term "evidenced by" was no doubt aware of the distinction between evidence and proof. For while the words are often used interchangeably, the latter is the legal effect of the former.

In view of the holdings in the above mentioned cases, the petitioner is sustained on this issue.

*Decision will be entered under Rule 50.*