ELEANOR H. VENDIG, AS ALLEGED TRANSFEREE OF ASSETS OF MAVCO SALES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43724. Filed August 31, 1954.

*Morris Back, Esq.*, for the petitioner.
*Maurice E. Stark, Esq.*, for the respondent.

#### OPINION.

OPPER, *Judge:* A deficiency determined against petitioner as transferee of the assets of Mavco Sales, Inc., in the amount of $10,000 in respect of unpaid income, declared value excess-profits, and excess profits taxes for fiscal years 1944 to 1946, inclusive, in excess of $29,-000 is presently in controversy. All of the facts were stipulated. The facts are found accordingly.

Petitioner, Eleanor H. Vendig, is an individual residing at Cedar Lane, Sands Point, Long Island.

Mavco Sales, Inc., the alleged transferor, is a dissolved corporation, organized under the laws of the State of New York and prior to its dissolution having its office and principal place of business in the county, city, and State of New York. Its returns were filed with the collector of internal revenue for the third district of New York.

Petitioner was the holder of 100 shares of preferred stock of Mavco Sales, Inc., with a paid-in value of $10,000, which was all the issued and outstanding preferred stock.

All the common stock of Mavco Sales, Inc., was owned by Malcolm A. Vendig Company, Incorporated, a New York corporation.

The stockholders of Malcolm A. Vendig Company, Incorporated, on January 23, 1946, were as follows:

|  | *Shares of common stock* |
|---|---|
| Malcolm A. Vendig | 135 |
| Ira C. Vendig | 45 |
| J. Murray Beveridge | 20 |
| Total issued and outstanding | 200 |

At a meeting of the board of directors of Malcolm A. Vendig Company, Incorporated, held on January 15, 1946, a plan of reorganization was set up, under which it was resolved that it would be to the best interests of said corporation and its subsidiary, Mavco Sales, Inc., to consolidate and concentrate all the operations of both corporations into the parent company, for the purpose of effecting considerable business economies.

It was provided that "as part of the plan of reorganization, Mrs. Vendig [petitioner] had agreed to accept, in exchange for her preferred stock in the subsidiary, an equivalent number of shares of the preferred stock of this corporation."

It was further provided that Mavco Sales, Inc., be dissolved as of January 31, 1946, and that all its assets and business be distributed to the parent, in consideration of the assumption by the parent of all the outstanding liabilities of the subsidiary and in extinguishment of the common stock held by the parent and also in extinguishment of the preferred stock which the parent was to acquire from petitioner.

The plan was duly approved by resolutions of the board of directors of both corporations.

Pursuant to the plan the 100 shares of preferred stock of $100 par value each held by petitioner in Mavco Sales, Inc., were exchanged for a similar number of shares of preferred stock of $100 par value each in the parent.

Pursuant to the plan, Mavco Sales, Inc., transferred all its assets and liabilities to the parent on January 24, 1946, in extinguishment of all its stock.

Pursuant to the minutes setting forth the plan, the name of Malcolm A. Vendig Company, Incorporated, was changed to Mavco, Inc., by certificate duly filed on January 24, 1946.

Pursuant to the plan, Mavco Sales, Inc., filed a certificate of dissolution on January 24, 1946, and was duly dissolved under article 10, section 105, of the Stock Corporation Law of New York on January 29, 1946.

Following the transfer set forth above, the operations formerly conducted separately by each corporation were conducted by the single corporation, Mavco, Inc.

Mavco Sales reported on the basis of a fiscal year ending January 31. The last taxable year of the corporation was January 24, 1946. Malcolm A. Vendig Company, Incorporated, and Mavco, Inc., reported on a calendar year basis.

There are Federal income, declared value excess-profits, and excess profits taxes due from Mavco Sales, Inc., for its taxable years ended January 31, 1944, 1945, and 1946 in a total amount in excess of $29,000, and all of said taxes are unpaid and owing to the United States.

As a result of the liquidation of Mavco Sales, Inc., and the distribution of its assets to Mavco, Inc., on January 24, 1946, Mavco Sales, Inc., became and since has been insolvent and without assets to satisfy the taxes in controversy herein.

Subsequent to the accrual of the taxes here in question, petitioner received without consideration assets of Mavco Sales, Inc., of a value of $10,000.

Petitioner is liable as a transferee of Mavco Sales, Inc., for income tax, declared value excess-profits tax, and excess profits tax of the said corporation for its taxable years ended January 31, 1944, 1945, and 1946 in the total amount of $10,000, together with interest thereon as provided by law from the date of the transfer.

For the calendar year 1946, Mavco, Inc., suffered a net loss of $63,895.03, of which $52,562.46 would, if permissible, be available to Mavco Sales, Inc., as a net loss carry-back.

Although an ingenious effort is made to distinguish *Bates Motor Transport Lines, Inc.*, 17 T. C. 151, affd. (C. A. 7) 200 F. 2d 20, we think that case and the principles it incorporates are equally applicable here. They result in the necessary conclusion that petitioner's liability as transferee of the assets of the dissolved Mavco Sales company cannot be avoided.

Since more than one transferee can be liable for a deficiency, *Eleanor Lansburgh, Administratrix*, 35 B. T. A. 928, and Mavco, Inc., the successor of Mavco Sales, is concededly liable for the tax originally due, the question is definable in other terms, as whether that liability is primary, as though the successor was itself the taxpayer, or merely secondary as a transferee. If the latter, petitioner could also be liable. *Eleanor Lansburgh, Administratrix, supra.* And the admitted insolvency of Mavco Sales and petitioner's receipt of $10,000 of Mavco, Inc., preferred stock in exchange for her consent to the transfer and to cancellation of her equivalent holding in Mavco Sales, are respondent's grounds for contending that she is.

In *Oswego Falls Corporation*, 26 B. T. A. 60, affd. (C. A. 2) 71 F. 2d 673, the successor by consolidation of three predecessor companies was held to be liable not as a transferee but directly. If the present facts were the same and the reasoning there adopted could be followed, it might require that the same approach be employed here. The "lia-

bility at law" attributable to a transferee under section 280, Revenue Act of 1926, the forerunner of section 311, Internal Revenue Code of 1939,[1] was said not to exist there because there was no express assumption of the predecessor's liabilities by the successor. That is not so here. On the other hand, the equitable remedy afforded a creditor to follow into the transferee's hands property received from an insolvent transferor, see *Samuel Wilcox*, 16 T. C. 572, was supposed to fail in that case because the New York statute under which the consolidation occurred expressly made the new corporation liable for existing debts "directly and primarily as the taxpayer and not secondarily." *Oswego Falls Corporation*, 26 B. T. A. 60, 72. An adequate remedy at law was hence thought to be present, thus eliminating any equitable remedy. That also cannot be said of this case. The merger here concededly came about under the dissolution section, 105, and not under the merger section, 85, of the New York Stock Corporation Law; and no comparable provision imposing any burden on the successor corporation is, naturally, included.

There is hence nothing in that case irreconcilable with the application here of *Bates Motor Transport Lines, Inc., supra.* But were there any inconsistency we should be constrained to follow the later authority.

The facts of the *Bates* case are so strikingly similar to what happened in these proceedings that it would be most difficult to reach any other result. If we substitute petitioner for "Chaddick" or "the stockholders," Mavco Sales for "Bates" and Mavco, Inc., for "Standard" the following words could almost have been uttered in this proceeding:

Chaddick denies liability as a transferee of assets of Bates, claiming that no assets were transferred to him and contending that the mere fact that he agreed to and did exchange his shares of stock in Bates for shares of stock in Standard affords no basis for a conclusion that he was a transferee.

The agreement * * *, pursuant to which Bates transferred its assets to Standard, shows that Bates was to transfer all of its assets to Standard and that Bates, thereupon, would be liquidated. This would leave it without assets. As consideration for the assets, Standard was (1) to assume all of the liabilities of Bates and (2) to issue to the stockholders of Bates shares of its (Standard's) capital stock in exchange, share for share, for the shares of stock they held in Bates. From the foregoing, it is apparent that the consideration to be given by Standard was the assumption of Bates' liabilities, plus shares of its stock

---

[1] SEC. 311. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

equal in number to the outstanding shares of stock in Bates. The fact that the arrangement provided for Standard to issue such shares directly to the stockholders of Bates, who were to surrender to Standard the shares of stock they held in Bates, *was no different in effect than if Standard had issued the shares directly to Bates, who, in turn, had called in its outstanding stock and in liquidation distributed to its shareholders the shares of stock in Standard.* The result in each instance would be for the stockholders of Bates to receive the stock in Standard and leave Bates insolvent and without funds to pay its debts * * *. [*Bates Motor Transport Lines, Inc.*, 17 T. C. 151, 159. Emphasis added.]

We cannot see that either Mavco's ownership of all of Sales' common stock, nor the fact, if it be such, that the "merger" was a nontaxable reorganization, affects the applicability of *Bates*. For all that appears, the stock-for-stock exchange in that case might likewise have been covered by section 112 of the Internal Revenue Code of 1939, the operative words of which are, after all, merely that "no gain or loss shall be recognized" upon the events there described. No one here contends that a tax, as such, was incurred upon the "merger."

Chaddick was the sole stockholder of Standard, and the majority stockholder of Bates. But petitioner's preferred stock was as much the subject of an exchange for the successor's preferred stock as Chaddick's common was in the *Bates* case. And it is not contested that the transfer of all of Sales' physical assets and the issuance to petitioner rather than to Sales of the new preferred stock [2] left it in as much an insolvent condition as was Bates after its transfers. "Corporations do not and can not dispose of their assets in such a manner as to create a condition of virtual insolvency, without the consent of their shareholders." *Continental Oil Co.*, 34 B. T. A. 29, 31, affd. (C. A., D. C. Cir.) 100 F. 2d 101.

" * * * as part of the plan of reorganization, Mrs. Vendig [petitioner] had agreed to accept, in exchange for her preferred stock in the subsidiary, an equivalent number of shares of the preferred stock of this [successor] corporation," says the agreement. By the same plan, all of Sales' property was turned over to Mavco. Petitioner was thus in the same position as the stockholders of the Young Company who in *Hunn* v. *United States*, (C. A. 8) 60 F. 2d 430, 432, "received $54,000 in value of the stock of the Waggener Company in consideration for permitting the Waggener Company to take over the assets and capital stock of the Young Company, and as a result the Young Company was stripped of all its assets so that it was unable to pay the taxes due the United States."

We entertain no doubt that petitioner's responsibility for these levies as a recipient of the equivalent of property of the insolvent taxpayer

---

[2] This is the outermost bound of interpretation that can be placed on the stipulation that all the assets and liabilities of Mavco Sales were distributed to Mavco, Inc., on the dissolution of Sales.

and her liability "at law or in equity" therefor are necessary to give effect to the overriding purpose and specific language of the transferee provisions.

As an alternative only, petitioner denies the basic tax liability of Mavco Sales on the ground that net losses of the successor corporation in later years can be carried back and eliminate Sales' taxable income for the year in issue. Even if *Stanton Brewery* v. *Commissioner*, (C. A. 2) 176 F. 2d 573, were to be followed on its own facts, the disposition here would be governed not by it but by *Standard Paving Co.*, 13 T. C. 425, affd. (C. A. 10) 190 F. 2d 330, certiorari denied 342 U. S. 860. We there said: "There is no basis here for following the reasoning of the Circuit Court in the *Stanton Brewery* case, even assuming that we agreed with that case. The question is not one of the status, in the hands of a transferee corporation, of a deduction earned by a transferor corporation, but the reverse thereof, and involves a loss not sustained until after the transferor corporation ceased to exist." We denied the carry-back there, and do the same here.

*Decision will be entered for the respondent.*