LA SALLE NATIONAL BANK, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 45530.    Filed December 14, 1954.

*Charles M. Nisen, Esq.,* and *John R. Nicholson, Esq.,* for the
petitioner.

*David H. Nelson, Esq.,* for the respondent.

480

482

484

MURDOCK, *Judge:* The petitioner used and is entitled to use an excess profits credit based upon invested capital as prescribed by section 714 of the Internal Revenue Code for the years 1943 and 1945 and is entitled to carry its unused excess profits credit for 1943 over to 1945 pursuant to section 710 of the Internal Revenue Code. The only issues are whether deposits by the State of Illinois, outstanding cashier's checks and bank money orders, and amounts due on purchase of Government securities constituted borrowed capital within the meaning of section 719 (a) (1) in computing the petitioner's excess profits credit and unused excess profits credit carry-over. That section includes in borrowed capital "the amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage or deed of trust."

The petitioner contends that the deposits by the State of Illinois constituted "outstanding indebtedness" evidenced by a "mortgage" or "certificate of indebtedness" within the meaning of section 719 (a) (1). The deposit liability of a bank has been held not to constitute "borrowed capital" or "outstanding indebtedness" under section 719 (a) (1) on the ground that a deposit is a transaction peculiar to the banking business which does not have the characteristics of money borrowing. *Commissioner* v. *Ames Trust & Savings Bank*, 185 F. 2d 47, reversing 12 T. C. 770. The decision of the Court of Appeals was expressly followed in *National Bank of Commerce*, 16 T. C. 769, and was cited with approval in *Capital National Bank of Sacramento*, 16 T. C. 1202. The petitioner apparently concedes that ordinary deposits with it do not constitute "borrowed capital." The petitioner pledged collateral security for the deposits with the State and the State treasurer agreed to give notice of 30 days prior to his withdrawal of any of those funds. The difference between such deposits and those made with the petitioner by an ordinary depositor, as to which no special provisions apply, do not serve to distinguish the two classes of deposits for present purposes. Following the cases above cited, it is held that the State deposits do not constitute borrowed capital within the meaning of section 719 (a) (1).

The petitioner in the ordinary course of its business frequently drew and issued cashier's checks and money orders for various purposes as set forth in the Findings of Fact. The petitioner contends that its average daily balances of outstanding cashier's checks and bank money orders constituted borrowed capital within the meaning of section 719 (a) (1). The Commissioner concedes that the cashier's checks are bills of exchange but argues that they do not represent the type of outstanding indebtedness which Congress intended to include in borrowed capital under section 719 (a) (1).

The type of indebtedness involved in any particular case must be tested against the intention of Congress in enacting this provision for not all indebtedness evidenced by the enumerated instruments qualifies. *Player Realty Co.*, 9 T. C. 215; *Hart-Bartlett-Sturtevant Grain Co.*, 12 T. C. 760, 769, affd. 182 F. 2d 153. The Commissioner in Regulations 112, section 35.719–1, provided:

The term "certificate of indebtedness" includes only instruments having the general character of investment securities issued by a corporation as distinguishable from instruments evidencing debts arising in ordinary transactions between individuals. Borrowed capital does not include indebtedness incurred by a bank arising out of the receipt of a deposit and evidenced, for example, by a certificate of deposit, a passbook, a cashier's check, or a certified check.

The court, in *Commissioner* v. *Ames Trust & Savings Bank, supra*, approved that regulation and held that time deposits evidenced by certificates of deposit were not borrowed capital because of the inherent and established distinction between deposit liability and commercial indebtedness which was properly carried into the regulation. The reasoning of that case applies to the cashier's checks and bank money orders here in controversy. Those checks and orders were not used by the bank to borrow money in the ordinary sense or in any way that Congress had in mind in enacting section 719 (a) (1). The bank used the checks and orders as a convenience for itself and its customers. Not only did it not pay any interest in connection with them but it actually made charges for issuing the orders. The checks and orders were merely used to carry on the day-to-day business of the bank. Many of the checks were used by the bank, as a taxpayer other than a bank would draw and use a check. For example, the bank used them to pay its current bills, to disburse funds to non-depositors, and to purchase securities. If a depositor asked for a cashier's check or a bank money order for his convenience, it was merely charged against his deposit account. A customer who was not a depositor, desiring to obtain a cashier's check or a bank money order for his use, was generally required to deposit an equivalent amount of cash or collateral with the bank. None of the uses of these checks and orders would be deemed a borrowing by the bank as borrowing is commonly under-

486

stood. This case on this issue is not distinguishable in principle from *Commissioner* v. *Ames Trust & Savings Bank, supra, National Bank of Commerce, supra,* and *Capital National Bank of Sacramento, supra,* and it is held that the checks and orders did not give rise to any excess profits credit based upon invested capital. The case of *S. Lowenstein & Son,* 21 T. C. 648, cited by the petitioner does not involve a bank or a set of facts comparable to those here present.

The petitioner purchased Government securities from a broker on credit and paid interest to the broker on the amount due it. The Commissioner contends that the amount due the broker was never evidenced by an instrument of the kind required in section 719 (a) (1). The evidence does not show that the petitioner ever issued any instrument of the required kind in connection with these transactions. The broker sent a confirmation of each purchase to the petitioner and later sent corrected confirmations to him when a payment was made. The petitioner directed the Federal Reserve Bank by letters to accept the securities and to make payments to the broker upon receipt of the securities. The indebtedness to the broker was paid at the time the corrected confirmation and the letter from the petitioner to the Federal Reserve Bank were received. Those corrected confirmations and letters were not in existence while the indebtedness to which they referred was outstanding. The letters directing payment upon delivery of the securities to the Federal Reserve Bank were not negotiable instruments under the law of Illinois. The original confirmations were certainly not mortgages or bills of exchange. They did not even represent the agreement in regard to payment for the securities being purchased. The petitioner cannot rely upon any oral agreements or custom or practice since section 719 (a) (1) requires that the amounts be evidenced by a written instrument. It cites no cases in point. Indebtedness evidenced in this way is not included in borrowed money under section 719 (a) (1).

*Decision will be entered for the respondent.*